**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:22-058-DCR**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**V.**                <u>**SENTENCING MEMORANDUM**</u>
                     <u>**OF THE UNITED STATES**</u>

**CHRISTOPHER CUSTER**                                            **DEFENDANT**
  **AKA RUSTY CUSTER**

\* \* \* \* \*

      CHRISTOPHER CUSTER perpetrated a fraud on Traditional Bank and P.H. using fabricated documentation to project a very wealthy financial condition in order to get two loans from Traditional Bank and a personal loan from victim P.H. He acted alone and with the intent to deceive for the sole purpose of taking money that did not belong to him. In advance of sentencing in this matter, the United States sets forth below its position on the unresolved objections to the Presentence Investigation Report ("PSR") and the appropriate sentence. Balancing the seriousness of the offense and other factors in 18 U.S.C. § 3553(a), the government recommends a mid-range Guidelines sentence of 46 months' incarceration, which meets the objectives of 18 U.S.C. § 3553(a) in fashioning a sentence that is adequate, but not greater than necessary, as required by law.

    **I.**     **The Applicable Advisory Guidelines Range**

      The advisory Sentencing Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis. *United States v. Bolds*, 511 F.3d 568,

579-80 (6th Cir. 2007) (citation omitted). Accordingly, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines Range." *United States v. King*, 553 F. App'x 518, 520 (6th Cir. 2014) (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The PSR correctly calculates a base offense level of seven (7), which is the base offense level for the bank fraud Guideline in 18 U.S.C. § 1344. [PSR at ¶ 14.] The PSR also properly increases the offense level by sixteen (16) levels for a loss amount greater than $1,500,000 but not more than $3,500,000, and two (2) levels for the defendant deriving more than $1,000,000 in gross receipts from a financial institution. [*Id.* at 15-16.] Finally, the PSR properly awards CUSTER a three (3) point reduction for acceptance of responsibility. [*Id.* at 22.] With the PSR's total offense level of twenty-two (22) and a criminal history falling in Category I, the advisory Guidelines range is 41 to 51 months' imprisonment. [*Id.*]

## II. Objections to the Presentence Investigation Report

### A. *Restitution Amount*

After notice that he had been caught, but before the date of indictment, CUSTER repaid the money he owed to P.H. Additionally, Traditional Bank exercised its authority to foreclose on the house and property securing the two loans it gave CUSTER. The Defendant has failed to pay any money over to the bank since the foreclosure, which means that interest on the unpaid loan balance has continued to accrue. This is despite the fact that throughout the pendency of this prosecution, the Defendant has been paying $9,100 in mortgage payments (not to mention utility bills for a house this size) on a house

he purchased, fully funded by mortgage loan proceeds for $1,500,000. [PSR at ¶ 44.] To our knowledge, he has made no attempts to sell this property so that at least some of the money he paid over to his mortgage every month could be paid over to the victim.

Thus, the restitution figure has grown as interest on the loan has continued to accrue. According to a Victim Impact Statement supplement submitted by Traditional Bank, of February 15, 2023, assuming CUSTER has not made any additional payments, CUSTER owes the bank $527,406.85 in restitution. In fraud cases, including bank fraud, courts recognize that lost interest is a legitimate loss to the victim for the use of its money and therefore hold that such interest is compensable as restitution. *See, e.g., United States v. Qurashi*, 634 F.3d 699, 704 (2d Cir. 2011) ("Recognizing that a victim's losses may change in value between the date of the loss and the date of sentencing, the MVRA mandates that the higher of those figures be used for restitution purposes. . . . We hold that the MVRA allows a sentencing court to award prejudgment interest in a criminal restitution order . . . ."); *United States v. Williams*, 292 F.3d 681, 687 (10th Cir. 2002) (holding that restitution order properly included accrued pre-judgment interest on an auto loan); *United States v. Morgan*, 376 F.3d 1002 (9th Cir. 2004) (holding that district court did not abuse its discretion by including interest and finance charges in restitution order following bank fraud conviction); Catherine M. Goodwin, *Federal Criminal Restitution* § 7:11 Pre-judgment interest ("The courts generally agree that [pre-judgment] interest should be included in the computation of restitution owed the victim at sentencing. It is considered a part of the loss caused to the victim by the defendant's offense conduct.");

*cf. United States v. Cox*, 665 F. App'x 457, 462 (6th Cir. 2016) (citing *Morgan* and other cases and stating that interest may be included in a restitution award).

    B.  *Financial Condition*

The PSR lays out CUSTER's financial condition, which is based in this case upon representations from CUSTER.  It appeared that the information conveyed to the U.S. Probation Officer was incomplete. Custer also completed and returned a financial disclosure form ("FDF") to the United States, which contains certain information that differs from that in his PSR. Specifically, CUSTER informed the United States in the FDF that he earned $15,000 per month, which he expects to increase 10-15% over the next 2-3 years, but in information conveyed to the U.S. Probation Officer, he stated he was making roughly half of that. [PSR at ¶ 44.]  The income reported to the U.S. Probation Office would not cover the $9,100 monthly mortgage payment CUSTER has been making. The FDF also indicated that along with the $1,500,000 home CUSTER purchased, he also purchased ancillary real property for $1,125,000, a fact that does not appear in the PSR.  Finally, it appears that he neglected to inform the U.S. Probation Officer that he owns a Recreational Vehicle.

These omissions are material as they deflate CUSTER's financial condition and his ability to pay a fine, while begging the question as to why CUSTER has refused to repay restitution at or before the time of sentencing.  He lives a lavish lifestyle, as a $9,100 mortgage payment on a $1,500,000 home demonstrates. This must be taken into consideration when the Court is fashioning a sentence against this Defendant.

### III. A Guideline Sentence is Appropriate Under 18 U.S.C. § 3553(a)

While the advisory Guidelines range serves as the "starting point and initial benchmark" for the Court's sentencing analysis, *Bolds*, 511 F.3d 579-80, the Court must also consider the factors set forth in 18 U.S.C. § 3553(a). These include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, and the need to avoid unwarranted sentencing disparities between similarly situated defendants. *See* 18 U.S.C. § 3553(a)(1)-(3), (6). When fashioning the appropriate sentence, the Court endeavors to find a punishment that is "sufficient, but not greater than necessary" to address these considerations. 18 U.S.C. § 3553(a).

In achieving this task, district courts consider the Sentencing Guidelines *together* with the statutory factors set forth in § 3553(a). *See United States v. Booker*, 543 U.S. 220, 246 (2005). This is because the Guidelines "reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). The Guidelines therefore "seek to embody the § 3553(a) considerations, both in principal and in practice." *United States v. Haj-Hamed*, 549 F.3d 1020, 1027 (6th Cir. 2008) (*quoting Rita*, 552 U.S. at 350).

Turning first to the nature and circumstances of the offense, CUSTER purported to Traditional Bank and P.H. to be a sophisticated businessman with the wherewithal to

develop money-generating enterprises in which P.H. would profit and Traditional Bank would be repaid. He filled out personal financial statements that conveyed a net worth in excess of $6,000,000 to Traditional Bank and $9,000,000 to P.H., all supported by statements from well-known financial institutions that had been doctored to portray CUSTER's holdings as significant.

Particularly egregious is that the Defendant falsely portrayed himself as a Navy Seal. Trading on the trust that would be afforded to him by those that respect a military background – especially as a Navy Seal – and the character traits that background would seem to impart, CUSTER doctored his personal history as he did his personal wealth.

The nature and circumstances of this offense demand a Guidelines sentence. And nothing about the Defendant's history and characteristics suggests otherwise. He had a "great" childhood and maintains good relations with his relatives. [PSR at ¶¶ 37-38.] He has a stable relationship with his wife of nearly thirty years and daughter. [*Id.*] He received some college level and vocational school training. [*Id.* at ¶ 42.] He suffers from no physical ailments or history of substance abuse. [*Id.* at ¶¶ 39-41.]

This is not the Defendant's first instance of white collar crime. In 2004, the Defendant intentionally misappropriated the property of Colonial Life Insurance Company by means of fraud, a charge which was dismissed after the Defendant completed his 60 days of unsupervised probation. [PSR at ¶ 34.] Other charges for white collar offenses were dismissed in Louisiana. That is until 2014, when CUSTER pleaded guilty to issuing worthless checks, a felony charge in Louisiana, when he purchased $1,364.72 worth of food from BBQ West without actually paying any money, a theft in

itself. [PSR at ¶ 28.] After this conviction in Louisiana, CUSTER moved to Kentucky, where he conducted the offense herein. Once he got in trouble in Kentucky, he then moved to Texas, where he got a loan fully funding the purchase of a $1,500,000 home, despite being under investigation or charges in Kentucky wherein he knew he owed a substantial amount of restitution. A Guidelines sentence is needed to reflect the seriousness of the offense, promote respect for the law, and protect the public.

Specific deterrence should be a consideration for CUSTER. CUSTER continues to obtain massive bank loans despite filing for bankruptcy and being under federal investigation for bank and wire fraud (for which he is now convicted). He remains a persistent threat to the financial industry. General deterrence is also a very important factor in CUSTER's sentence. At its core, the financial industry, especially regional banks such as Traditional Bank that operate through developing business relationships with members of the community, still rely on the honesty of its loan applicants when determining whether to lend money to individuals. Underwriting and other procedures in place to verify the veracity of applicants' claims can only go so far, and it is far too easy to doctor financial statements from other institutions. Individuals such as P.H., without the institutional strength of a financial institution, are even more susceptible to being taken advantage of by people like CUSTER.

Accordingly, a mid-range Guidelines sentence reflects the appropriate balance between the considerations of the Guidelines, the § 3553(a) factors, and the overarching principle that the sentence but sufficient but not greater than necessary.

### IV.  The Court Should Set Terms for the Payment of Restitution and Other Monetary Penalties.

The United States submits that CUSTER has the resources to pay his restitution amount, and the Court should set payment terms upon which he is to do so. As stated above, CUSTER resides in a home in Texas that he apparently purchased in 2021 for $1,500,000, along with ancillary real property that he purchased for $1,125,000. CUSTER pays $9,100 per month toward his mortgage on those properties and a combined $1,550 in gas and electric utilities, presumably related to this same real property. CUSTER's PSR further states that he pays $938 per month in homeowner's insurance. CUSTER reported monthly income in the amount of approximately $15,000 per month to the United States, which he expects to increase 10-15% over the next 2-3 years. Also, CUSTER owns a recreational vehicle as to which he allegedly pays another $638 per month in loan payments. In short, while earning $15,000 per month, with the capacity for more, CUSTER pays over $12,000 per month to reside on property worth millions of dollars and enjoy luxury goods. CUSTER has ample earning capacity. He should be compelled to put those resources toward compensation of his victims, not his own personal satisfaction.

Accordingly, the United States asks that the Court impose the following terms on CUSTER for the payment of his restitution:

1. Custer's restitution payments shall be due and payable immediately.

2. Payments shall be required by CUSTER in the amount of $5,000 per month, which amounts may be adjusted, as appropriate, based on CUSTER's changed circumstances pursuant to 18 U.S.C. § 3664(k) or 18 U.S.C. §3572(d)(3). While the United States recognizes that this amount exceeds the current amount of CUSTER's reported disposable income after expenses, the United States submits, as stated above,

    that CUSTER should not be permitted to commit himself to a lavish lifestyle on credit and then claim the inability to compensate the victim of his crime because his expenses are too high.

3. If CUSTER is sentenced to any period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalty payments, except those payments made though the Bureau of Prisons' Inmate Financial Responsibility Program, are to be made as directed by the Court, the probation officer, or the United States Attorney.

4. If CUSTER receives an inheritance, settlement (including a divorce settlement or personal injury settlement), gift, tax refund, bonus, lawsuit award, or any other receipt of money or property (to include, but not be limited to, gambling proceeds, lottery winnings, and money found or discovered), CUSTER must, within 5 business days of receipt, apply 100% of the value of such receipt to any restitution still owed.

5. Notwithstanding establishment of a payment schedule, nothing shall prohibit the United States from executing or levying upon property of CUSTER discovered before and after the date of this judgment. Any payment schedule is a minimum schedule of payments and not the only method or a limitation on the methods available to the United States to enforce the judgment.

## Conclusion

The offense level is correctly calculated in the PSR, and this Court should sentence CUSTER at the middle of the Guidelines range. Further, the Court should order immediate payment of restitution for the benefit of the victim, Traditional Bank, in the monthly payment amount of $5,000.

                Respectfully submitted,

                CARLTON S. SHIER, IV
                UNITED STATES ATTORNEY

                By:    /s/ Kathryn M. Dieruf
                         Kathryn M. Dieruf
                         Assistant United States Attorney
                         260 W. Vine Street, Suite 300
                         Lexington, Kentucky 40507-1612
                         (859) 685-4885
                         Kathryn.Dieruf@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

On February 6, 2023, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record:

>Brandi Lewis
>*Attorney for Christopher "Rusty" Custer*

<u>s/ Kathryn M. Dieruf</u>
Assistant United States Attorney
